█

Kalima JENKINS, by her friend, Kamau AGYEI; Carolyn Dawson, by her next friend, Richard Dawson; Tufanza A. Byrd, by her next friend, Teresa Byrd; Derek A. Dydell, by his next friend, Maurice Dydell; Terrance Cason, by his next friend, Antoria Cason; Jonathan Wiggins, by his next friend, Rosemary Jacobs Love; Kirk Allan Ward, by his next friend, Mary Ward; Robert M. Hall, by his next friend, Denise Hall;

Dwayne A. Turrentine, Turrentine, by his next friend, Shelia Turrentine; Gregory A. Pugh, by his next friend, David Winters, on behalf of themselves and all others similarly situated, Appellees,

American Federation of
Teachers, Local 691,

v.

The STATE OF MISSOURI; Honorable John Ashcroft, Governor of the State of Missouri, Appellants,

Wendell Bailey, Treasurer of the
State of Missouri;

Missouri State Board of Education, Roseann Bentley, Dan Blackwell, Terry A. Bond, President, Roger L. Tolliver, Raymond McCallister, Jr., Susan D. Finke, Thomas R. Davis, Cynthia B. Thompson, Members of the Missouri State Board of Education, Robert E. Bartman, Commissioner of Education of the State of Missouri, Appellants,

and

School District of Kansas City, Missouri and Claude C. Perkins, Superintendent thereof, Appellees,

Icelean Clark; Bobby Anderton; Eleanor Graham; John C. Howard; Craig Martin; Gay D. Williams; Kansas City Mantel & Tile Co.; Coulas & Griffin Insurance Agency, Inc.; Sharon Dunham; Lindsay K. Kirk; Robert Frazier; Rick Feierabend; Linda Hollenbeck; James Hollenbeck; Susan Horseman; and Clifford M. Horseman, Jackson County, Missouri.

Kalima JENKINS, by her friend, Kamau AGYEI; Carolyn Dawson, by her next friend, Richard Dawson; Tufanza A. Byrd, by her next friend, Teresa Byrd; Derek A. Dydell, by his next friend, Maurice Dydell; Terrance Cason, by his next friend, Antoria Cason; Jonathan Wiggins, by his next friend, Rose-

mary Jacobs Love; Kirk Allan Ward, by his next friend, Mary Ward; Robert M. Hall, by his next friend, Denise Hall; Dwayne A. Turrentine, by his next friend, Shelia Turrentine; Gregory A. Pugh, by his next friend, David Winters, on behalf of themselves and all others similarly situated, American Federal of Teachers, Local 691,

v.

The STATE OF MISSOURI; Honorable John Ashcroft, Governor of the State of Missouri; Wendell Bailey, Treasurer of the State of Missouri; Missouri State Board of Education, Roseann Bentley, Dan Blackwell, Terry A. Bond, President, Roger L. Tolliver, Raymond McCallister, Jr., Susan D. Finke, Thomas R. Davis, Cynthia B. Thompson, Members of the Missouri State Board of Education, Robert E. Bartman, Commissioner of Education of the State of Missouri, Appellants,

and

School District of Kansas City, Missouri and Claude C. Perkins, Superintendent thereof, Appellees,

Icelean Clark; Bobby Anderton; Eleanor Graham; John C. Howard; Craig Martin; Gay D. Williams; Kansas City Mantel & Tile Co.; Coulas & Griffin Insurance Agency, Inc.; Sharon Dunham; Lindsay K. Kirk; Robert Frazier; Rick Feierabend; Linda Hollenbeck; James Hollenbeck; Susan Horseman; and Clifford M. Horseman, Jackson County, Missouri.

Kalima JENKINS, by her friend, Kamau AGYEI; Carolyn Dawson, by her next friend, Richard Dawson; Tufanza A. Byrd, by her next friend, Teresa Byrd; Derek A. Dydell, by his next friend, Maurice Dydell; Terrance Cason, by his next friend, Antoria Cason; Jonathan Wiggins, by his next friend, Rosemary Jacobs Love; Kirk Allan Ward, by his next friend, Mary Ward; Robert

M. Hall, by his next friend, Denise Hall; Dwayne A. Turrentine, by his next friend, Shelia Turrentine; Gregory A. Pugh, by his next friend, David Winters, on behalf of themselves and all others similarly situated, Appellees,

American Federation of
Teachers, Local 691,

v.

The STATE OF MISSOURI; Honorable John Ashcroft, Governor of the State of Missouri; Wendell Bailey, Treasurer of the State of Missouri; Missouri State Board of Education, Roseann Bentley, Dan L. Blackwell, Terry A. Bond, President, Roger L. Tolliver, Raymond McCallister, Jr., Susan D. Finke, Thomas R. Davis, Cynthia B. Thompson, Members of the Missouri State Board of Education, Robert E. Bartman, Commissioner of Education of the State of Missouri, Appellants,

and

School District of Kansas City, Missouri and Claude C. Perkins, Superintendent thereof, Appellees.

Kalima JENKINS, by her friend, Kamau AGYEI; Carolyn Dawson, by her next friend, Richard Dawson; Tufanza A. Byrd, by her next friend, Teresa Byrd; Derek A. Dydell, by his next friend, Maurice Dydell; Terrance Cason, by his next friend, Antoria Cason; Jonathan Wiggins, by his next friend, Rosemary Jacobs Love; Kirk Allan Ward, by his next friend, Mary Ward; Robert M. Hall, by his next friend, Denise Hall; Dwayne A. Turrentine, by his next friend, Shelia Turrentine; Gregory A. Pugh, by his next friend, David Winters, on behalf of themselves and all others similarly situated, Appellees,

American Federation of Teachers,
Local 691,

v.

The STATE OF MISSOURI; Honorable John Ashcroft, Governor of the State of Missouri; Wendell Bailey, Treasurer of the State of Missouri; Missouri State Board of Education, Roseann Bentley, Dan Blackwell, Terry A. Bond, Presi-

dent, Roger L. Tolliver, Raymond McCallister, Jr., Susan D. Finke, Thomas R. Davis, Cynthia B. Thompson, Members of the Missouri State Board of Education, Robert E. Bartman, Commissioner of Education of the State of Missouri, Appellants,

and

School District of Kansas City, Missouri and Claude C. Perkins, Superintendent thereof, Appellees.

Kalima JENKINS, by her friend, Kamau AGYEI; Carolyn Dawson, by her next friend, Richard Dawson; Tufanza A. Byrd, by her next friend, Teresa Byrd; Derek A. Dydell, by his next friend, Maurice Dydell; Terrance Cason, by his next friend, Antoria Cason; Jonathan Wiggins, by his next friend, Rosemary Jacobs Love; Kirk Allan Ward, by his next friend, Mary Ward; Robert M. Hall, by his next friend, Denise Hall; Dwayne A. Turrentine, by his next friend, Shelia Turrentine; Gregory A. Pugh, by his next friend, David Winters, on behalf of themselves and all others similarly situated, Appellees,

American Federation of
Teachers, Local 691,

v.

The STATE OF MISSOURI; Honorable John Ashcroft, Governor of the State of Missouri; Wendell Bailey, Treasurer of the State of Missouri; Missouri State Board of Education, Roseann Bentley, Dan Blackwell, Terry A. Bond, President, Roger L. Tolliver, Raymond McCallister, Jr., Susan D. Finke, Thomas R. Davis, Cynthia B. Thompson, Members of the Missouri State Board of Education, Robert E. Bartman, Commissioner of Education of the State of Missouri, Appellants,

and

School District of Kansas City, Missouri and Claude C. Perkins, Superintendent thereof, Appellees.

Kalima JENKINS, by her friend, Kamau AGYEI; Carolyn Dawson, by her next friend, Richard Dawson; Tufanza A. Byrd, by her next friend, Teresa Byrd; Derek A. Dydell, by his next friend, Maurice Dydell; Terrance Cason, by his next friend, Antoria Cason; Jonathan Wiggins, by his next friend, Rosemary Jacobs Love; Kirk Allan Ward, by his next friend, Mary Ward; Robert M. Hall, by his next friend, Denise Hall; Dwayne A. Turrentine, by his next friend, Shelia Turrentine; Gregory A. Pugh, by his next friend, David Winters, on behalf of themselves and all others similarly situated, Appellees,

American Federation of
Teachers, Local 691,

v.

The STATE OF MISSOURI; Honorable John Ashcroft, Governor of the State of Missouri; Wendell Bailey, Treasurer of the State of Missouri; Missouri State Board of Education, Roseann Bentley, Dan Blackwell, Terry A. Bond, President, Roger L. Tolliver, Raymond McCallister, Jr., Susan D. Finke, Thomas R. Davis, Cynthia B. Thompson, Members of the Missouri State Board of Education, Robert E. Bartman, Commissioner of Education of the State of Missouri, Appellees,

and

School District of Kansas City, Missouri and Claude C. Perkins, Superintendent thereof, Appellees,

Ronika Newton, by her next friends, Ronald and Debra Newton; Marques Bussey, by his next friend, Christie Newman; Brian McClelland, by his next friend, Ella McClelland; Bryant Lightsey, by his next friend, Gina Lightsey; Nia Webster, by her next friend, Ajamu Webster; and Courtney Adams, by her next friend, Clinton Adams, Jr., Appellants.

Nos. 89–1253, 89–1311, 89–1838, 89–1956, 89–2337 and 89–2643.

United States Court of Appeals, Eighth Circuit.

Submitted Feb. 21, 1990.

Decided April 22, 1991.

Michael J. Fields and John W. Simon, Jefferson City, Mo., for appellants.

Patricia Brannan, Washington, D.C., and Arthur Benson, Kansas City, Mo., for appellees.

Before LAY, Chief Judge, HEANEY, Senior Circuit Judge, and JOHN R. GIBSON, Circuit Judge.

JOHN R. GIBSON, Circuit Judge.

The Kansas City school desegregation remedy continues to spawn numerous district court orders and appeals therefrom, most of them by the State of Missouri. Here, the State appeals from five separate district court orders that: 1) approved a revised procedure for funding the desegregation remedy; 2) required the State to pay the entire cost of asbestos removal in one phase of the school renovation capital improvements plan and fifty percent of it in the remaining phases of the plan; 3) approved the cost overrun on the construction of the new Central High School and required the State to pay half; 4) approved a formula for calculating costs the school district avoided as a result of the establishment of two new middle schools required by the desegregation plan; and 5) refused to require the desegregation monitoring committee to allow the State to bring its own court reporter to the committee's proceedings. In addition, a group of schoolchildren appeal from an order disqualifying their attorney and denying their motion to modify the magnet school plan. We affirm the orders entered by the district court.

In a June 5, 1984, order the district court rejected claims of interdistrict violations. *Jenkins v. Missouri*, No. 77–0420–CV–W–4, slip op. at 105 (W.D.Mo. June 5, 1984). After hearing additional evidence, the district court found the State of Missouri and the Kansas City, Missouri School District (KCMSD) liable for racial segregation of students within KCMSD and for failure to dismantle the dual school system. *Jenkins v. Missouri*, 593 F.Supp. 1485, 1503–04 (W.D.Mo.1984). After additional hearings, the district court ordered intradistrict remedies against KCMSD and the State. This court reviewed these several orders in *Jenkins v. Missouri*, 807 F.2d 657 (8th Cir. 1986) (en banc) (*Jenkins I*), *cert. denied*, 484 U.S. 816, 108 S.Ct. 70, 98 L.Ed.2d 34 (1987). Additional orders dealt specifically with developing and funding a desegregation plan, including a capital improvement plan, which provided for the renovation of certain existing facilities, construction of new facilities, and a magnet school plan. *Jenkins v. Missouri*, 639 F.Supp. 19 (W.D. Mo.1985); *Jenkins v. Missouri*, 672 F.Supp. 400 (W.D.Mo.1987). We affirmed these orders in *Jenkins v. Missouri*, 855 F.2d 1295 (8th Cir.1988) (*Jenkins II*). The Supreme Court granted *certiorari* to hear appeals related to the funding of the remedy by increased property taxes, *Missouri v. Jenkins*, 490 U.S. 1034, 109 S.Ct. 1930, 104 L.Ed.2d 402 (1990), and affirmed this court's rulings on the issue. *Missouri v. Jenkins*, —— U.S. ——, 110 S.Ct. 1651, 109 L.Ed.2d 31 (1990).

The implementation and funding of the desegregation remedy has resulted in continued litigation. The district court established a desegregation monitoring committee to oversee implementation of the court's orders, recommend modifications, and consider certain issues subject to re-view by the district court. The functioning of this committee and issues relating to the remedy and the funding of the remedy were before us in *Jenkins v. Missouri*, 890 F.2d 65 (8th Cir.1989) (*Jenkins III*). As the parties have continued to differ on the development of the details of the desegregation remedy, the district court has held additional hearings and entered numerous orders. A group of six orders comes to us on appeal in what is now the fourth round of the intra-district desegregation litigation.[1] While the broad scope of the desegregation litigation bears upon each issue in these orders, we believe that it is most efficient to forego a lengthy history and instead state the relevant facts as we discuss the separate issues.

## I.

The State first appeals from the district court's order of January 3, 1989, approving a revised procedure for funding the desegregation remedy. *Jenkins v. Missouri*, No. 77–0420–CV–W–4 (W.D.Mo. Jan. 3, 1989).

In response to this court's ruling that the district court exceeded its power in ordering an income tax surcharge to fund desegregation costs, *Jenkins II*, 855 F.2d at 1315–16 (8th Cir.1988), KCMSD requested increased funds from the State in order to insure that the remedy would be fully funded. The January 3, 1989, order implemented a revised funding method, known as a drawdown procedure, which works as follows: In any given month, desegregation costs are first paid by KCMSD with available desegregation revenues. After KCMSD spends all of its available funds, desegregation expenses are paid by withdrawing money from a special joint program account, into which the Treasurer of Missouri deposits the State's share of desegregation costs. The court ordered the State to maintain an $11 million balance in the account at the beginning of each month. *Jenkins*, slip op. at 4 (Jan. 3, 1989). Prior to this order, the State had been

1. The State appeals district court orders of January 3, 1989; January 13, 1989; April 20, 1989; May 5, 1989; and May 24, 1989. A group of KCMSD schoolchildren (the Ronika Newton group) appeal from an order dated September 11, 1990.

ordered to maintain a $5.25 million balance. The district court increased the State's funding obligation because the State and KCMSD were jointly and severally liable and this court has mandated that the remedies be fully funded.

■ The State argues that the district court erred in ordering the revised draw-down procedure because the State is now required to pay remedial costs for which KCMSD had been previously held to be solely liable. The State boldly argues that the district court has not held the State and KCMSD jointly and severally liable for the legal wrong underlying the remedy. The State urges that the district court did not make a finding of joint and several liability for the underlying wrong at the liability trial, and that the district court's application of joint and several liability was a "recent fabrication" in reaction to the State's successful appeal of the income tax surcharge.

We reject these arguments. We view the State's arguments as mere efforts to relitigate an issue that was settled long ago. In our decision dealing with the funding of the remedy, we made abundantly clear "that the constitutional violations must be remedied and the remedies fully funded." *Jenkins II*, 855 F.2d at 1316. We stated:

> In our earlier en banc opinion we made clear that the remedy ordered by the district court must be fully funded. Should the funds that KCMSD can provide for desegregation expenses under today's decision fall short, the remainder must be paid by the State, as the orders of the district court have imposed joint and several liability on the State and KCMSD.

*Id.* (citation omitted).

The district court's order recognized this very language in requiring the State to pay the balance of desegregation expenses as a jointly and severally liable party. *Jenkins*, slip op. at 4 (Jan. 3, 1989). In so doing, the district court carefully followed our specific directions that the remedies be fully funded.

The State's argument, with its all too evident personal overtones implying that the district judge recently fabricated a finding of joint and several liability, is plainly refuted by numerous orders entered in this litigation. For example, the district court order entered November 12, 1986, explicitly found the State and KCMSD jointly and severally liable for a portion of the magnet school plan, and the State solely liable for the remaining costs of its implementation. *Jenkins v. Missouri*, No. 77–0420–CV–W–4, slip op. at 1 (W.D.Mo. Nov. 12, 1986). The same order held the State and KCMSD jointly and severally liable for the cost of the capital facilities program, the site acquisitions, and the magnet school plan. *Id.* at 5–6.

Likewise, in its July 6, 1987, order, the district court applied comparative fault principles to allocate desegregation costs between KCMSD and the State, ruled that the State and KCMSD were "jointly and severally liable for the entire [1987–1988] budget," *Jenkins v. Missouri*, No. 77–0420–CV–W–4, slip op. at 15 (W.D.Mo. July 6, 1987), and ordered contribution between the two constitutional violators to be 75 percent for the State and 25 percent for KCMSD, *id.* at 14. The district court ordered joint and several liability in that instance pursuant to this court's mandate that "the remedy ordered by the Court be fully funded." *Id.* at 15 (quoting *Jenkins I*, 807 F.2d at 686).[2] This court subsequently affirmed the July 6, 1987 order. *Jenkins II*, 855 F.2d at 1308.

It is significant that five other district court orders[3] also refer to the joint and

---

2. Numerous other orders of the district court found joint and several liability with respect to particular aspects of the remedial plan. *See, e.g.*, Orders of: April 29, 1987, slip op. at 3; August 19, 1987, slip op. at 3–4; September 15, 1987, slip op. at 13; July 25, 1988, slip op. at 28;

January 13, 1989, slip op. at 5; March 30, 1989, slip op. at 8; April 4, 1989, slip op. at 3; April 12, 1989, slip op. at 7–8; April 20, 1989, slip op. at 11–12; May 5, 1989, slip op. at 4–5.

3. November 12, 1986, slip op. at 1; July 6, 1987, slip op. at 15; April 29, 1987, slip op. at 3;

several liability of KCMSD and the State. In appealing these orders, the State never attacked the findings of joint and several liability. Instead, the State limited its appeals to challenging the amount of financial contribution, the allocation of costs, and alleged violations of the eleventh amendment and federal-state comity principles. In the State's appeal from the district court's allocation of desegregation costs, the State admitted that "the State and KCMSD have been held jointly liable for an intradistrict violation." Reply Brief for Appellant at 27, *Jenkins II*, 855 F.2d 1295 (8th Cir.1988) (No. 86–1934–WM). In the same appeal, the State argued that "the court repeatedly made the State liable for most of the mandated costs, while casting its orders in the form of joint and several liability." Brief for Appellant at 15–16, *Jenkins II*, 855 F.2d 1295 (8th Cir. 1988) (No. 86–1934–WM). We need not read these statements as admissions that the district court based its orders upon a finding of joint and several liability, however, because the district court orders themselves clearly address that issue.

In *Jenkins II*, we affirmed the five district court orders using the language of joint and several liability. 855 F.2d at 1310–11, 1314 n. 18, 1316 n. 21. The State's argument that these orders only provided for joint and several liability as to certain parts of the remedy is fully answered by this court's affirmance of these orders. In affirming these orders, we explicitly stated that the remedy must be fully funded and should KCMSD's funds fall short, the remainder must be paid by the State, as a jointly and severally liable party. *Id.* at 1316.[4]

Insofar as the State has any right to complain, not having raised the issue on appeal from the earlier orders, it is evident that the district court based its order on its findings that the State created a system of segregated schools, and that both the State and KCMSD failed to dismantle that system. *Jenkins II*, 855 F.2d at 1300 (citing *Jenkins*, 593 F.Supp. at 1485, 1490, 1504). We entertain no doubt that the district court's 1985 order based its finding of intradistrict liability on the State's and KCMSD's failure to perform a common duty and on an indivisible harm caused by independent separate and concurring torts of two or more tortfeasors. *Jenkins*, 593 F.Supp. at 1503–04. Joint and several liability is, therefore, appropriate. *Edmonds v. Compagnie Generale Transatlantique*, 443 U.S. 256, 260, and n. 8, 99 S.Ct. 2753, 2756 and n. 8, 61 L.Ed.2d 521 (1979); *Brickner v. Normandy Osteopathic Hosp., Inc.*, 687 S.W.2d 910, 911 (Mo.Ct. App.1985); *See Restatement (Second) of Torts* § 878 (1977).

We deem it unnecessary to discuss the several criminal cases cited by the State, or its argument about the burdens placed upon all of the Missouri taxpayers. The State has opposed the district court orders placing a greater financial burden on KCMSD as well as orders placing on the State an obligation to pay for remedies KCMSD could not fund. Simply put, joint and several liability is an issue that has been previously decided by the district court and this court, and we reject the State's effort to argue otherwise.[5] In similar circumstances, we would entertain the possibility of awarding sanctions, but because a fee will be awarded to prevailing

---

August 19, 1987, slip op. at 3–4; September 15, 1987, slip op. at 14–15.

**4.** Two footnotes reiterated this holding:

We recognize that there may be some circumstances in which the district court could justifiably find that KCMSD did not have sufficient resources to fully fund the apportionment we have affirmed today of the desegregative costs, and if it so finds, we do not preclude the district court from placing the remainder of the burden on the State. It is our intent that KCMSD contribute its share, subject to these considerations.

855 F.2d at 1314 n. 18 (citations omitted).

While we have rejected the argument urged by a number of the amici and adopted by the dissent that under this principle all costs should be borne by the State, the State does have an obligation to pay any required sums which are beyond the capacity of the school district.

*Id.* at 1316 n. 21.

**5.** The State's arguments are at best frivolous and represent another example of the verbal excess we have earlier criticized. *See Jenkins III*, 890 F.2d at 68–69.

counsel, we are satisfied that it is most appropriate to leave the State with the additional expense it will be required to pay.

## II.

▮ The State next appeals from the district court's May 5, 1989, order increasing funding for asbestos abatement in the capital improvement plan ordered as part of the desegregation remedy. *Jenkins v. Missouri*, No. 77–0420–CV–W–4, slip op. at 4–5 (W.D.Mo. May 5, 1989).

KCMSD sought $910,224 in additional funding from the State for 100% of the asbestos abatement costs incurred in the renovation of five elementary schools and one high school.[6] *Id.* at 1. In addition, KCMSD sought a court order authorizing it to proceed with asbestos abatement for all Phase III renovations and directing that the costs of such removal be shared by the State. *Id.* KCMSD also sought a court order establishing guidelines for asbestos abatement for the remainder of the capital improvement plan in compliance with the Asbestos Hazard and Emergency Response Act (AHERA), 15 U.S.C. §§ 2641–2654 (1988).

The district court concluded that asbestos abatement costs were a proper desegregation expense and ordered the additional funding, but allocated the cost equally between KCMSD and the State. *Jenkins*, slip op. at 4 (May 5, 1989). The district court also concluded that asbestos abatement costs in later phases of the capital improvement plan should be allocated equally between the State and KCMSD with joint and several liability, and approved the use of the AHERA regulations as guidelines for the asbestos abatement process. *Id.* at 4–5. *See* 15 U.S.C. § 2643; 40 C.F.R. §§ 763.80–99 (1990).

On appeal, the State makes the same arguments that the district court rejected. The State first argues that the presence of asbestos was not caused by illegal segregation in the school district, is not a vestige of segregation, and therefore, the cost of

eliminating asbestos is not a cost of desegregation or a cost for which the State can be held jointly and severally liable. The State urges that the duty to abate asbestos has been placed essentially on all schools in the country, and that it is a problem at both formerly all black and formerly all white schools. The State also argues that our earlier decision, *Jenkins II*, required KCMSD to pay asbestos abatement costs out of interest income from capital improvement bonds, and that KCMSD is required to pursue claims against other responsible entities or funding sources before it can recover such expenses from the State.

The district court based its ruling concerning asbestos abatement costs on its previous findings, affirmed by this court, that " '[t]he improvement of school facilities is an important factor in the overall success of this desegregation plan,' " and that " 'safety and *health hazards* [in a school facility are] both an obstacle to education as well as to maintaining and attracting non-minority enrollment.' " *Jenkins*, slip op. at 3 (May 5, 1989) (quoting *Jenkins*, 639 F.Supp. at 40) (emphasis added in May 5 order). The district court also acknowledged this court's conclusion that capital improvements are " 'necessary for successful desegregation,' " *id.* (quoting *Jenkins I*, 807 F.2d at 685), and are " 'required both to improve the education available to the victims of segregation as well as to attract whites to the schools,' " *id.* (quoting *Jenkins II*, 855 F.2d at 1305).

Moreover, we note that the district court ordered the renovation of older school buildings to remedy physical facilities that " 'have literally rotted,' " *Jenkins II*, 855 F.2d at 1300 (quoting *Jenkins*, 672 F.Supp. at 411) and that both KCMSD and the State caused the decay of these facilities. *Jenkins II*, 855 F.2d at 1305 (citing *Jenkins*, slip op. at 4 (November 12, 1986); *Jenkins*, 639 F.Supp. at 411). KCMSD presented uncontested evidence to the district court that asbestos was found in existing buildings during the court-ordered renovation, and that many asbestos-containing prod-

---

6. Cook, Swinney, Volker, Marlborough, Hart-

man elementary schools and Lincoln Academy.

ucts that normally would pose no danger (such as flooring), became potentially dangerous when disturbed during the renovation work. Thus, the evidence in the record before the district court differentiates this situation from situations found at other school districts, or for that matter any other public buildings. Here, KCMSD and the State are under an order to remove decay, caused by both, so as to provide safe and healthy school facilities that are not an obstacle to education or desegregation, and asbestos removal is necessary to comply with that order. The unique circumstances presented here cause us to conclude that the district court did not err in holding that asbestos abatement costs are a proper desegregation expense, and in requiring the State to assume a portion of these costs as a jointly and severally liable party.

The State's remaining arguments on this issue require little discussion. The State's insistence that our earlier decision required KCMSD to fund asbestos removal out of interest from funds generated by the bond issue simply does not square with the language in our opinion. *See Jenkins II*, 855 F.2d at 1306. Our language in that decision suggested only that interest from bond proceeds will be available as a possible source of funding KCMSD's share of additional desegregation expenses, such as additional asbestos removal costs. *Id.* Likewise, the argument that the district court abused its discretion in not requiring KCMSD to pursue claims against responsible entities is fully answered by the fact that such litigation has commenced, as demonstrated by pleadings furnished to this court of which we take judicial notice. *School Dist. v. Acands, Inc.*, No. 87–903–CV–W–9 (W.D.Mo., docketed Oct. 23, 1987). Similarly, we cannot conclude that the district court abused its discretion in refusing to allow the State to make its own asbestos survey of the KCMSD schools. We reject this argument in light of the facts that the State declined to participate in the formulation of a plan for asbestos abatement in the KCMSD schools or to initiate joint meetings with the staff, and that the desegregation monitoring committee was kept abreast of the asbestos abatement problems.

We further note that the State did not appeal earlier orders of the district court and this court that included asbestos abatement costs in the capital improvements plan. Asbestos abatement costs were included in the budgets for Phase III capital improvement projects that the district court held were to be financed by the State, *see* 639 F.Supp. at 56, and the budget in the long range capital improvement plan approved by this court. *Jenkins II*, 855 F.2d at 1295. Accordingly, for the reasons stated above, we cannot conclude that the district court's characterization of asbestos abatement costs as a desegregation expense is clearly erroneous. *Anderson v. City of Bessemer City*, 470 U.S. 564, 573–74, 105 S.Ct. 1504, 1511, 84 L.Ed.2d 518 (1985).

### III.

The State next appeals from that portion of the district court's January 13, 1989, order that approved a decision of the desegregation monitoring committee refusing to allow a court reporter to be present at its proceedings. *Jenkins v. Missouri*, No. 77–0420–CV–W–4, slip op. at 5 (W.D.Mo. Jan. 13, 1989). The district court held that the committee was not intended to function with "overly formal procedures," and that the presence of a court reporter would tend to increase the level of formality and thereby hinder "an open exchange of thoughts, opinions and ideas." *Id.*

To a great extent, the State's arguments express objections to the functioning of the desegregation monitoring committee that we addressed in the *Jenkins III* opinion. 890 F.2d at 66–68. In *Jenkins III*, we held that the use of the desegregation monitoring committee was an appropriate exercise of the district court's powers in obtaining assistance for carrying out its duties, and that decisions of the committee could be final unless appealed to the district court. *Id.*

█ As the creation of this committee was within the district court's equitable power, and as the parties have a right to

appeal the committee's rulings to the district court, we are not convinced that the district court erred or abused its discretion by denying the State's request to require the committee to allow the presence of a court reporter at its meetings. Our earlier opinion made clear that the use of this committee is based upon the right of de novo appeal, and we believe it best to leave the details of the committee's functioning to the district court's sound discretion. The State has established neither an error compromising legal rights nor an abuse of discretion. We affirm the district court's order refusing to require the committee to allow a court reporter at its proceedings.

## IV.

■ The State appeals from the district court's May 24, 1989, order that adopted a formula for calculating costs that were avoided in other parts of the school system in 1987–88 because of the establishment of Lincoln and New Paseo middle schools. *Jenkins v. Missouri*, No. 77–0420–CV–W–4 (W.D.Mo. May 24, 1989). In making its determination, the district court accepted KCMSD's proposal, which divided costs into fixed and variable components. The court found that fixed costs would not generate cost avoidance because they are necessary to operate the schools regardless of enrollment, and that variable costs might generate cost avoidance because they are dependent on enrollment and calculated on a per pupil basis. *Id.* at 4–5.

The State argues that the court should adopt a formula previously used to calculate the magnet transportation budget that, incidentally, the State had unsuccessfully opposed on appeal in *Jenkins III.* 890 F.2d at 69. The State's approach would multiply the number of students from the KCMSD attending Lincoln and New Paseo middle schools by the inflation-adjusted per pupil cost of educating them elsewhere in the school district. The per pupil cost would be based on the per pupil figure used in the 1984–85 school year, the year preceding implementation of the desegregation plan, and would be adjusted for inflation. The State's formula would result in a cost avoidance figure of $2,278,604, as compared with the $96,106 reached by application of the KCMSD formula. *Jenkins,* slip op. at 2–3 (May 24, 1989).

The KCMSD formula resulted in a lower cost avoidance figure because it divided costs into fixed and variable categories and excluded from its calculation such fixed items as the costs of principals, assistant principals, instruction coordinators, librarians, cafeteria employees, nurses, clerical employees, security guards, utilities, maintenance, equipment, telephone service, and other similar expenses. *Id.* at 4–5. The court found that these costs will occur at other schools in KCMSD regardless of the transfer of some of their students to Lincoln and New Paseo. *Id.* at 5. Variable costs that were avoided by the opening of the two middle schools include the costs of such items as supplies, textbooks, and postage. The district court found that these costs will decline at other schools in KCMSD as their students transfer to Lincoln and New Paseo. *Id.*

The district court thus concluded that the distinction between fixed and variable costs was valid, and it rejected the State's proposal because it included fixed costs that are not avoided elsewhere as a result of student transfers to Lincoln and New Paseo.

The State argues, in addition to advocating application of the magnet transportation budget formula, that the use of the KCMSD formula violates limitations on desegregation remedies announced in *Milliken v. Bradley,* 418 U.S. 717, 94 S.Ct. 3112, 41 L.Ed.2d 1069 (1974) (*Milliken I*) and reiterated in *Milliken v. Bradley,* 433 U.S. 267, 97 S.Ct. 2749, 53 L.Ed.2d 745 (1977) (*Milliken II*).

In *Milliken I,* the Court stated that "the scope of the remedy is determined by the nature and extent of the constitutional violation." 418 U.S. at 744, 94 S.Ct. at 3127. In *Milliken II,* the Court emphasized that "federal-court decrees must directly address and relate to the constitutional violation itself." 433 U.S. at 282, 97 S.Ct. at 2758. KCMSD agrees that *Milliken I* and *Milliken II* require that the State receive

an appropriate credit for any savings in the KCMSD's operating budget that result from operation of the new magnet schools funded by the desegregation plan's base budget. KCMSD asserts that its formula abides by *Milliken I* and *Milliken II* by insuring that nondesegregation costs are excluded from the State's obligation.

By relying on *Milliken I* and *Milliken II*, the State is apparently arguing that the district court made an error of law. We see no basis for concluding that the district court applied rules of law that conflict with *Milliken I* and *Milliken II*, and are convinced that nothing in the *Milliken* cases in any way impinges upon the district court's factual findings or analysis.

The determination of the proper formula to calculate costs avoided necessarily involves a distinctly fact-bound inquiry, and, indeed, the district court here made detailed findings of fact. Factual findings are not overturned unless clearly erroneous, Fed.R.Civ.P. 52(a), and the State makes no effort to demonstrate that the district court clearly erred.

In analyzing the cost avoidance issue, we are convinced of the necessity of distinguishing between fixed and variable costs. We therefore conclude that the district court did not err in rejecting a formula that did not incorporate that distinction nor in accepting a formula that properly relied on that distinction. As time goes on, and the desegregation plan is further implemented, the district court is free to consider further arguments that the application of a different formula to costs avoided is warranted.

For the foregoing reasons, we affirm the district court's order on the cost avoidance issue.

## V.

█ The State next argues that the district court exceeded its authority in approving an increase of $8,231,565 in Central High School's construction budget. *Jenkins v. Missouri*, No. 77–0420–CV–W–4 (W.D.Mo. Apr. 20, 1989). The district

court's November 12, 1986, order had approved a budget for capital facilities in magnet schools, including $15,243,050 for Central High School. *Jenkins v. Missouri*, No. 77–0420–CV–W–4, slip op. at Attachment B (W.D.Mo. Nov. 12, 1986). The April 1989 order increased Central's budget to $23,474,615, and quoted language in the November 1986 order which stated "that the budget 'consists of studied estimates which would be adjusted as actual costs are ascertained.'" *Jenkins*, slip op. at 3 (April 20, 1989) (quoting *Jenkins*, slip op. at 4, 6 (Nov. 12, 1986)).

The district court in its April 20, 1989 order found: 1) that the location of Central in the predominantly black central corridor area of Kansas City made its desegregation a challenge; 2) that alterations in and additions to the planned athletic facilities, which include an olympic-size pool, indoor running track, and a gymnastics facility, caused the budget for such facilities to exceed preliminary estimates; 3) that the expanded athletic facilities and the space allocation of 220 square feet per student are necessary to implement the Computers Unlimited and Classical Greek magnet themes and to attract non-minority students; 4) that the planned Central facilities are more extensive than any other high school in the Kansas City area and that such facilities are necessary to attract non-minority suburban students to the inner city; 5) that the original budget omitted costs for architects and engineers, advertising, soil surveys and testing, furniture and construction contingencies; 6) that the original budget assumed a net space to gross space efficiency ratio of 85 percent, while the new budget assumes a 72 percent ratio.[7] *Jenkins*, slip op. at 1–8 (April 20, 1989).

The district court stated that the State did not contest KCMSD's motion for approval of a site acquisition and preparation budget or KCMSD's motion for a $1,739,077 increase in Central's equipment budget. *Id.* at 9–10.

---

7. The ratio of useable space (which excludes space for circulation, restrooms, mechanical equipment and janitor's closets) to total space is referred to as "efficiency." A 75 percent efficiency ratio is usual for school buildings. *Jenkins*, slip op. at 8 (April 20, 1989).

The district court approved the Central High construction, site acquisition and preparation, and equipment budgets, *id.* at 10–11, but rejected the planned installation of a 10–meter diving platform, *id.* at 5. The court held that costs associated with the construction and site acquisition and preparation budgets approved in its order shall be allocated equally between the State and KCMSD, with joint and several liability. *Id.* at 11. The court also held that the costs associated with the equipment budget shall be allocated 75 percent to the State and 25 percent to KCMSD, with joint and several liability. *Id.*

The State argues that the district court erred in approving the overrun in Central's construction and equipment budgets because KCMSD failed to prove or even plead the changed circumstances necessary to justify modifying an existing injunction. The State contends that the district court erred by failing to require such proof. The State further argues that the district court erred in modifying its November 1986 order to impose joint and several liability on the State for additional amounts approved by the district court to construct and equip Central. The State contends that KCMSD should fully fund the budget increases because the Central cost overrun resulted either from errors by KCMSD in formulating the original estimate or from plans to enhance Central beyond what is necessary to achieve desegregation.

The State asserts that KCMSD unjustifiably expanded Central's plans after the district court approved the original budget estimate instead of attempting to adjust the plans to conform to the budget. It also contends KCMSD did not inform the district court of the planned increase in Central's facility and budget for 18 months in an attempt to "maneuver" the district court into acceding to its wishes.

We are not persuaded by the State's argument that the district court exceeded its authority in modifying injunctive relief. We have held that a federal court has "inherent jurisdiction in the exercise of its equitable discretion and subject to appropriate appellate review to vacate or modify its injunctions." *Booker v. Special School Dist. No. 1*, 585 F.2d 347, 352 (8th Cir. 1978), *cert. denied*, 443 U.S. 915, 99 S.Ct. 3106, 61 L.Ed.2d 878 (1979). School desegregation plans are particularly likely to need adjustment. As the Supreme Court has observed regarding such cases: "[E]quity has been characterized by a practical flexibility in shaping its remedies and by a facility for adjusting and reconciling public and private needs." *Milliken II*, 433 U.S. at 288, 97 S.Ct. at 2761 (quoting *Brown v. Board of Educ.*, 349 U.S. 294, 300, 75 S.Ct. 753, 756, 99 L.Ed. 1083 (1955)). The Fifth Circuit recently cited with approval a treatise that stated: " '[A] court must continually be willing to redraft the order at the request of the party who obtained equitable relief in order to insure that the decree accomplishes its intended result.' " *United States v. Lawrence County School Dist.*, 799 F.2d 1031, 1046 (5th Cir.1986) (quoting 11 C. Wright & A. Miller, Federal Practice and Procedure, § 2961, at 599 (1973)).

We have said that the basic responsibility for determining whether and to what extent an injunction should be modified "rests primarily on the shoulders of the district court that issued the injunction in the first place." *Booker*, 585 F.2d at 353. Based on the foregoing authorities, we conclude that the district court had the authority to modify its earlier injunctive order.

The district court correctly recognized that the November 1986 budget consisted of studied estimates to be adjusted as actual costs were ascertained. The State's argument essentially seeks to require KCMSD to construct the new Central High for the amount of the original estimate plus a contingency overrun and engineering and architectural fees totaling approximately $3.3 million. The April 1989 order establishes that the district court carefully considered the extensive evidence regarding the design process for Central, including the athletic facilities, the classical Greek and computer magnet programs, and the size and space requirements for the school. The court's analysis particularly focused on the attractiveness of Central's facilities to non-minority students. The dis-

trict court cited the removal of certain athletic, art and music facilities from Central's design plans and the efforts of the project management team to live within the original budget as factors indicating KCMSD's efforts to reduce Central's cost. *Jenkins* slip op. at 8–9 (April 20, 1989). The district court also pointed out that even a witness for the State conceded that the Central High concept was outstanding and could help achieve desegregation in the KCMSD. *Id.* at 9.

After carefully considering the evidence regarding space needs for the magnet programs and athletic facilities, the district court found that the space allocation of 220 square feet per student was justified and that the "magnet programs could not be successfully implemented in a lesser facility." *Id.* at 8. While the original budget contained certain flaws, the district court found that the process used by KCMSD in the design of Central followed the procedures the State's expert outlined as normally used by educators and architects in designing schools. *Id.* at 4. The district court therefore rejected the State's claim that the design process was inappropriate. *Id.*

The State makes no argument that any of the district court's findings are clearly erroneous. The State characterizes the district court's findings as "policy judgments" and argues that its determinations should be subject to de novo review. We reject the State's argument as wholly unpersuasive. Applying the standard of *Bessemer City*, 470 U.S. at 573–74, 105 S.Ct. at 1511, we are convinced that the district court did not clearly err in finding that the KCMSD's design process was appropriate, that the additions to the planned athletic facilities were justified, that the allocated space of 220 square feet per student is necessary to implement the magnet themes and enhance the school's attractiveness to non-minority students, and that the increased construc-

tion and equipment budgets are necessary to meet the design requirements.

The State's final argument, concerning joint and several liability, is an argument with which we have already dealt in this decision. The State's argument is particularly unpersuasive in view of the fact that the November 1986 order charged the State with joint and several liability for the costs of the capital improvements and new construction and made the State solely liable for a portion of the relief ordered. *Jenkins,* slip op. at 1, 5–6 (Nov. 12, 1986).

This court affirmed the November 1986 order following an appeal by the State. *Jenkins II,* 855 F.2d at 1308. The State did not appeal to this court the finding of joint and several liability for the capital facilities program that included Central. Joint and several liability for the construction costs of Central is thus the law of the case. *See Liddell v. Missouri,* 731 F.2d 1294, 1304–05 (8th Cir.1984) (en banc), *cert. denied,* 469 U.S. 816, 105 S.Ct. 82, 83 L.Ed.2d 30 (1984).

In sum, the district court's November 1986 order expressly stated that the capital improvements budget was subject to adjustment as actual costs were ascertained. The district court based its April 1989 order on factual findings that the State does not allege to be clearly erroneous. We are convinced that the district court did not err in exercising its equitable power to modify the original cost estimates, and we therefore affirm its April 1989 order permitting an increase in the construction and equipment budgets for Central High School and allocating costs between the State and KCMSD with joint and several liability.

## VI.

The last of the appeals before us [8] is from the district court's order disqualifying the attorneys for the Ronika Newton group, a group of black schoolchildren, and denying their motion to modify the long-range magnet school plan. *Jenkins v. Mis-*

---

**8.** The State also appealed a November 15, 1988, order that awarded the Jenkins class fees under 42 U.S.C. § 1988 (1988) at "market rates" for paralegal workers and law clerks. *Jenkins v. State of Missouri,* No. 77–0420–CV–W–4, slip op.

at 6–9 (W.D.Mo. Nov. 15, 1988). The State withdrew this appeal after the Supreme Court decided the issue in *Missouri v. Jenkins,* 491 U.S. 274, 109 S.Ct. 2463, 2471–72, 105 L.Ed.2d 229 (1989).

*souri*, No. 77–0420–CV–W–4, slip op. at 10–11 (W.D.Mo. Sept. 11, 1989). The district court permitted the Newton group to file an amicus brief in which the group sought to eliminate the racial quota guidelines from the magnet plan's admission standards. *Jenkins*, slip op. at 1, 8 (Sept. 11, 1989).

■ The district court disqualified the Newton group's counsel, Mark J. Bredemeier, Jerald L. Hill and Richard P. Hutchison, of the Landmark Legal Foundation, because they "previously represented and currently represent[ ] in this litigation interests adverse to the interest of movants." *Id.* at 10. The Landmark attorneys were, and continue to be, counsel of record for amici curiae Icelean Clark and others in actions challenging the court-ordered property and income tax surcharges. *Id.* at 9–10. Landmark also represented intervenors Eleanor Graham and others when that group challenged the court-ordered property tax increases. *Id.* Landmark's clients in this case, the Newton group members, are participants in the magnet school program, and as such are direct beneficiaries of the same court-ordered taxes that Landmark opposed in its representation of the Clark and Graham groups and continues to oppose by representing the Clark group today.

In reaching its decision to disqualify, the district court cited the ABA Model Code of Professional Responsibility EC 5–15 (1980) which states: "A lawyer should never represent in litigation multiple clients with differing interests; and there are few situations in which he would be justified in representing in litigation multiple clients with potentially differing interests." [9] *Id.* (quoted in *Jenkins*, slip op. at 10 (Sept. 11, 1989)). Rule 1.7 of the Missouri Supreme Court Rules of Professional Conduct (1986) (found at Missouri Rule 4) prohibits repre-

sentation of a client if the representation "may be materially limited by the lawyer's responsibilities to another client or to a third person, or by the lawyer's own interests...."

■ We have, in attorney disqualification issues, stated that the district court bears responsibility for supervision of the members of its bar. *Fred Weber, Inc. v. Shell Oil Co.*, 566 F.2d 602, 605 (8th Cir. 1977) (citing *Hull v. Celanese Corp.*, 513 F.2d 568, 571 (2d Cir.1975)) (subsequent history omitted). *See also Central Milk Producers Coop. v. Sentry Food Stores, Inc.*, 573 F.2d 988, 991–93 (8th Cir.1978); *Black v. Missouri*, 492 F.Supp. 848, 859 (W.D.Mo.1980). The district court's action in this case is discretionary and will only be upset upon a showing of abuse of discretion. *Fred Weber, Inc.*, 566 F.2d at 606. That discretion is particularly broad in class actions, and especially when, as in this case, there is ongoing litigation. *Mendoza v. United States*, 623 F.2d 1338, 1346 (9th Cir.1980) ("class suit imposes special responsibilities upon the trial judge" because it carries "inherent dangers of conflict"), *cert. denied*, 450 U.S. 912, 101 S.Ct. 1351, 67 L.Ed.2d 336 (1981). *See* Fed.R. Civ.P. 23(d) (granting district court authority to make "appropriate orders" in class actions).

On behalf of the Newton group, Landmark argues that its appearance before the Supreme Court on the tax issue has not and will not have any effect on the magnet school plan or full funding of the desegregation plan. Landmark argues that neither the Clark nor the Graham group has ever contested the implementation of the desegregation plan, or that it should be fully funded, only the propriety of funding via court-imposed taxes. Landmark further argues that vague and general incon-

9. The Newton group's brief points out that the district court for the Western District of Missouri does not follow the ABA Model Code of Professional Responsibility, which contains Ethical Consideration 5–15. Under Rule 2(D)(2) of the Rules of the District Court for the Western District of Missouri (1983), the Western District follows whatever rules of professional responsibility the Missouri Supreme Court adopts, and

on August 7, 1985, the Missouri Supreme court adopted the newer Model Rules of Professional Conduct. Missouri Rule 4. On this issue the Model Rules are substantially similar to the Model Code. Model Rule 1.7 states: "A lawyer shall not represent a client if the representation of that client will be directly adverse to another client ..." Model Rules of Professional Conduct Rule 1.7 (1983); Missouri Rule 4 (Rule 1.7).

sistencies giving rise to hypothetical conflicts do not justify disqualification.

We are unconvinced by these arguments. The district court made the following statements about the conflict arising from Landmark's representation:

[The Newton group members'] desire to participate in the magnet school program evidences their interest in the successful implementation of the desegregation remedy, which includes the magnet school program. As a result, [the Newton group members] would benefit from the court-ordered income tax surcharge and property tax increase, which amici curiae Icelean Clark, et al, previously opposed and currently opposes through representation by [the Newton group's] counsel. Thus, it is clear that amici curiae Icelean Clark, et al's, interest in reversing the court-ordered taxes to fund the desegregation remedy is adverse to [the Newton group's] interest in seeking greater access to magnet schools.

*Jenkins*, slip op. at 10 (Sept. 11, 1989).

■ When this appeal was argued before us, Landmark had represented the Clark group before the Supreme Court on the tax issue,[10] and was awaiting the Court's decision. We also take judicial notice that Landmark continues to represent the Clark group in further litigation not only before the district court, but in this court. In representing the Clark group, Landmark's efforts threatened the viability of the desegregation plan by challenging the plan's funding.

Landmark's representation of the Newton group while still counsel of record for the Clark group presented a genuine conflict of interest. The district court recognized this potential conflict and correctly disqualified Landmark from the Newton group's motion.

Landmark also argues that no conflict of interest arises out of its prior representation of the Graham group because the district court dismissed the Graham group from this litigation after that group prevailed on its only claim. Landmark complains that the district court relied on a boilerplate allegation from the memorandum in support of the Graham group's motion to intervene in the surcharge refund action and that the alleged conflict is irrelevant because those proceedings have ended.

We recognize, as did the district court, that the Graham group was no longer a party in the *Jenkins* litigation when Landmark began representing the Newton group. The district court did not base its disqualification on a conflict of interest arising out of Landmark's prior representation of the Graham group and its present representation of the Newton group. The court only quoted statements Landmark made during the previous representation because the reasoning therein provided additional support for the court's decision to prevent Landmark's concurrent representation of the Newton and Clark groups. *See Jenkins*, slip op. at 10–11 (Sept. 11, 1989).

The district court relied specifically on an allegation in the Graham group's motion for leave to intervene that stated: "All of the present parties *clearly* have interests adverse to those of Applicants: Plaintiffs [including the Ronika Newton group members], *obviously*, are the direct beneficiaries of the revenues generated by the income tax surcharge." *Id.* at 10–11 (citing Graham group's memorandum in support of motion to intervene at 3) (emphasis added by district court). The district court viewed this statement as an admission by Landmark that a conflict of interest exists between two parties when one party wishes to challenge the legitimacy of a court-ordered remedy and another party stands to benefit from the same remedy the first party is challenging. We find no error in the district court's application of this reasoning to Landmark's simultaneous representation of the Clark and Newton groups.

We also reject Landmark's attempt to brand an allegation essential to the Graham group's right to intervene as simply boilerplate. Such categorization is inappropriate in light of Fed.R.Civ.P. 11, which requires an attorney filing a pleading to

10. *Missouri v. Jenkins*, —— U.S. ——, 110 S.Ct. 1651, 1664 n. 19, 109 L.Ed.2d 31 (1990).

sign the pleading thereby certifying that "to the best of the signer's knowledge, information and belief formed after reasonable inquiry it is well grounded in fact." *Id.*

■ Landmark argues that to the extent any conflict of interest arises by its representation of the Newton group, this conflict is ameliorated by the informed consent of that group's members. *See* Rule 1.7 of the Missouri Supreme Court Rules of Professional Conduct. The Newton group members are minor schoolchildren, and as such, are not capable of giving fully informed consent. We observe that a trial court has a special obligation to see that minors are properly represented, *United States v. Reilly,* 385 F.2d 225, 228 (10th Cir.1967), because it assumes the ultimate responsibility for determinations made on behalf of children. *Noe v. True,* 507 F.2d 9, 12 (6th Cir.1974); *Black v. State of Missouri,* 492 F.Supp. 848, 869 (W.D.Mo.1980). Thus, by disqualifying Landmark as the Newton group's counsel, the district court properly discharged its special responsibility by deciding that conflicts of interest rendered Landmark an inappropriate advocate of the Newton group.

We find no abuse of discretion in the district court's decision to disqualify Landmark. In *Central Milk,* we stated the general rule that "we encourage the district courts to strictly enforce the Code of Professional Responsibility." 573 F.2d at 993. With that in mind, we affirm the district court's decision to disqualify.

The Newton group argues that despite disqualification of counsel, the district court should, nonetheless, have considered the group's motion to modify the long-range magnet school plan. We believe that the district court correctly denied the motion because the Newton group was acting through counsel, and counsel had been disqualified. We also point out that counsel had not filed a motion to intervene on behalf of the Newton group, although it is evident from their representation of other amici and interested parties that they were aware of this procedure. Finally, the Newton group concedes that its members have

all been admitted to magnet schools since the filing of this action, Brief for Appellants at 5 n. 3, *Jenkins v. Newton* (8th Cir.1989) (No. 89–263) so it is likely their action would now be moot. *See Carson v. Pierce,* 719 F.2d 931, 933 (8th Cir.1983).

With regard to modifying the magnet school plan, this court affirmed the present version of the program. *See Jenkins II,* 855 F.2d at 1301–04. Certainly as time passes, the magnet school program will be subject to modification. Indeed, in the order now under appeal, the district court considered a motion by the Jenkins class to modify the magnet admissions policy and the racial quota that the district court established. The appellate briefs also inform us of other ongoing efforts to modify the magnet school racial guideline policy. We are satisfied that our best course at this time is to affirm the district court order of September 11, 1989, and leave further development of this issue for the future.

We affirm the orders of the district court of January 3, 1989, January 13, 1989, April 20, 1989, May 5, 1989, May 24, 1989, and September 11, 1989.